IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GEORGE DUMAS and ROZOLA DUMAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. 2:05-cv-100 |
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is before the Court on the Motion for Summary Judgment, filed by Defendant, Pension Benefit Guaranty Corporation, on August 31, 2006. For the reasons set forth below, the motion is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' complaint. Furthermore, this Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

Pro se Plaintiffs, George and Rozola Dumas, filed their complaint against Defendant, Pension Benefit Guaranty Corporation ("PBGC"), on June 27, 2005, claiming entitlement to additional pension benefits. On August 31, 2006, PBGC filed the instant

1

motion for summary judgment, arguing that the PBGC Appeals Board decision finding that Mr. Dumas is entitled to $471.70 monthly benefits was not arbitrary or capricious, and PBGC is entitled to judgment as a matter of law.

On January 30, 2007, this Court issued an order taking the motion under advisement, and notifying pro se Plaintiffs under *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), that the Court would take as true any factual allegation, supported by admissible evidence, submitted by PBGC, unless Plaintiffs submitted affidavits or other evidence contradicting those factual allegations. On February 27, 2007, Plaintiffs filed what was titled an "affidavit" in response to the Court's order, containing excerpts from PBGC literature. PBGC filed its reply brief on March 20, 2007. Having been fully briefed, this motion is ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record

2

must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue

3

may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### Undisputed Material Facts

The facts in this case are undisputed. PBGC is a federally created agency that administers the pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1302. PBGC guarantees benefits, within certain limits, when a covered plan terminates with insufficient assets to cover its benefit liabilities. 29 U.S.C. § 1322.

Plaintiff, George Dumas, is a participant in the LTV Steel Hourly Pension Plan (the "Pension Plan"), and his wife, Rozola Dumas, is the beneficiary under the Pension Plan. When the LTV

4

Corporation went bankrupt, PBGC and LTV agreed to terminate the Pension Plan, effective March 31, 2002. PBGC became statutory trustee[1] and made benefit determinations regarding the participants in the Pension Plan. In a letter dated April 21, 2004, PBGC advised Mr. Dumas of its determination of the amount of his monthly benefit, $471.70. (AR-055.)[2]

Mr. Dumas' then-attorney[3] filed an appeal of the PBGC's determination on May 28, 2003. (AR-042-043.) The appeal acknowledged that Mr. Dumas was currently receiving $471.70 per month under the Pension Plan, but noted that the maximum monthly benefit paid for a plan that terminated on March 31, 2002, was $3,579.55. (AR-042.) The appeal also noted that the PBGC's statement sent to Pension Plan participants told them that PBGC adjusts the maximum benefit paid if a participant chooses a form of payment other than a straight life annuity, and quotes:

> Except for disabled members receiving Social Security disability benefits, we also adjust the maximum benefit for commencement ages other than age 65.

---

[1] When a plan covered under Title IV terminates with insufficient assets to satisfy its pension obligations to the employees, PBGC becomes trustee of the plan, taking over the plan's assets and liabilities. *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 637 (1990).

[2] PBGC submitted the Administrative Record ("AR") along with its motion for summary judgment.

[3] On July 10, 2003, Mr. Dumas advised the PBGC Appeals Board that his attorney was withdrawing from the case.

5

(AR-042, 045.) The appeal argues that, because Mr. Dumas had been receiving a disability pension from the Social Security Administration since 1979, he falls into the exception clause, and Mr. Dumas is entitled to the maximum guaranteed benefits for plans terminating in 2002. (AR-042-043.)

Mr. Dumas' appeal was referred to the Insurance Operations Department ("IOD"). (AR-024.) IOD sent Mr. Dumas a letter dated August 13, 2003, stating that the "maximum insurance limitation" was a "cap" to his monthly plan benefit and did not represent his actual entitlement under the Pension Plan. (AR-019.) IOD found that Mr. Dumas was receiving his "full-accrued benefit under the plan (unreduced for early retirement)," and explained that changing his retirement type from a "30-year" to a "permanent incapacity" retirement would not change his benefit. *Id.* A permanent incapacity retirement would have paid Mr. Dumas an additional $400 per month until he was eligible for Social Security benefits. (AR-019.) Mr. Dumas was already receiving Social Security disability benefits, so he was not eligible for the supplement. (AR-019.)

Mr. Dumas appealed the PBGC's decision on October 9, 2003. (AR-009-010.) He argued as follows:

> I noticed that you keep referring to the LTV Plan in your letter of August 13, 2003. Once again, that plan was terminated and the $471.70 was terminated with the plan. PBGC was supposed to make me a new Retirement Plan after the old plan was terminated. They stated my payments would continue without interruption but I am still waiting on the plan from PBGC. In previous letters

6

>     they have always referred to the estimated payment
>     that I am currently receiving.
>
>     \*         \*         \*         \*         \*
>
>     I understand, that you say, the $3,579.55 is the
>     cap to my monthly benefit, but according to the
>     PBGC Maximum monthly guarantees booklet, it reads
>     quite differently.  Under the plan that I am
>     entitled to when LTV was terminated, what I am
>     receiving at this time is incorrect.
>
>     \*         \*         \*         \*         \*
>
>     I would like to receive monthly, the Maximum
>     Guaranteed Benefits and Disabled Benefits for plans
>     terminating in 2002 as you state in the PBGC
>     Pension Booklet 2002 according to my age and the
>     Year the Plan Terminated.

(AR-010.)

The PBGC Appeals Board issued its decision on the appeal on January 22, 2004. In addressing the issues raised by Mr. Dumas and his former counsel, the PBGC Board reasoned as follows. First, "[u]nder the law, PBGC may guarantee only benefits required by a terminated plan. PBGC is continuing to pay you the full $471.70 benefit you were receiving when the Plan terminated." (AR-002.) In response to Mr. Dumas' former counsel's argument that Mr. Dumas retired in 1982 due to "permanent injury," the records showed that the Plan retirement was effective August 1, 1978, before he was disabled for Social Security purposes on November 27, 1979. (AR-002). Therefore, Mr. Dumas' Plan benefit is a 30-year retirement instead of a Permanent Incapacity benefit. (AR-002.) Moreover, his $398.74 Plan benefit had increased to $471.70 under Plan

7

amendments. (AR-002.) In response to the argument that an early retirement factor should not have been used, the Appeals Board replied that an early retirement factor was not used in the calculation of Mr. Dumas' benefit. (AR-002.) Finally, the Appeals Board found that the PBGC's maximum guaranteed benefit "(i) only limits benefits PBGC may guarantee, and (ii) does *not* require PBGC to increase a benefit otherwise required under a terminated plan." (AR-003 (emphasis in original).) Based upon the aforementioned reasoning, the Appeals Board denied Mr. Dumas' appeal. Plaintiffs filed this action on June 27, 2005.

Summary Judgment Is Warranted For PBGC

The only issue in this case is whether Mr. Dumas is entitled to a pension of $3,579.55 per month rather than the pension he is currently collecting, $471.70 in monthly benefits. This Court is reviewing a final agency decision and may set aside the action under the Administrative Procedures Act only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see Kauble v. Pension Ben. Guar. Corp.*, No. IP 93-1331-C-H/G, 1994 WL 722966, *2 (S.D. Ind. Dec. 27, 1994).

Mr. Dumas' argument that he is entitled to the maximum monthly benefit for a plan that terminated on March 31, 2002, is completely unsupported by case law or statutory citations. To the contrary,

8

the literature provided by the PBGC to Mr. Dumas and the relevant statutes do not provide an entitlement to the maximum insurance limitation in this case.

The communication Mr. Dumas received from the PBGC when it became trustee of the Pension Plan provided as follows:

> For plans terminating in 2002, the maximum monthly benefit paid by the PBGC is $3,579.55, payable as a Straight Life Annuity at age 65.  We adjust the maximum benefit paid for options other than a Straight Life Annuity.  Except for disabled members receiving Social Security disability benefits, we also adjust the maximum benefit for commencement ages other than age 65.

(AR-045.) Nothing in this communication informs Mr. Dumas that he is personally eligible to receive the maximum monthly benefit paid by PBGC.  Moreover, following an examination of the relevant statutes, the Court has concluded that Mr. Dumas is not entitled to receive the maximum monthly benefit.

PBGC does not create new pension plans; rather, it guarantees certain benefits in existing pension plans that terminate, like LTV's plan.  *See* 29 U.S.C. § 1322(a)("the corporation shall guarantee . . . the payment of all nonforfeitable benefits . . . under a single-employer plan"); 29 C.F.R. 4022.3 ("the PBGC will guarantee the amount, as of the termination date, of a benefit provided under a plan to the extent that the benefit does not exceed the limitations in ERISA.").  Even Mr. Dumas does not claim that under his Pension Plan, he is entitled to $3,579.55 in monthly benefits, nor could he.  (AR-006-007, AR-091-093.)  The pertinent

9

regulation states that a participant is entitled to a benefit "if under the provisions of the plan" the benefit was either: (i) in pay status on the plan's termination date, (ii) an optional form of benefit that he elected before the plan terminated, (iii) a form of benefit for which, prior to plan termination, the participant satisfied all conditions necessary for receiving the benefit, other than applying for it, or (iv) payable upon retirement in the absence of an election by the participant.  29 C.F.R. § 4022.4. The $3,579.55 monthly benefit Mr. Dumas seeks does not fall into any of these categories.

Mr. Dumas seems to misunderstand the definition of the PBGC's "maximum insurance limitation."  The maximum insurance limitation is a limit established by Congress on the amount that PBGC may pay when it guarantees a pension plan benefit.  *See* 29 U.S.C. § 1322(a), (b).  The specific amount of the limitation is established each year by regulation.  *See* 29 C.F.R. §§ 4022.21-.23.  The maximum insurance limitation is the maximum amount of a pension benefit that the PBGC may lawfully guarantee – it does not set the amount of benefits any one individual is entitled to earn.  For example, if a 65-year-old retiree were receiving $5,000 per month in March 2002 when PBGC became trustee of the Pension Plan, the maximum insurance limitation establishes that the most PBGC could pay the employee would be $3,579.55 per month.  But if that same employee was receiving $400 a month, he would still receive $400 a

month from the PBGC.

The maximum insurance limitation limits the PBGC's guarantee of a standard benefit (e.g., a benefit that is payable as a life annuity beginning at age 65). *See* 29 U.S.C. § 1322(b)(3). Consequently, if a participant varies from this standard, there may be an adjustment in the limitation. For example, if a participant retired before age 65, the maximum insurance limitation would be reduced to account for the increased number of months that the participant would be expected to receive a pension. But this only comes into play if the participant's benefit is large enough to be limited by the maximum insurance limitation to begin with.

ERISA provides an exception to this rule - if a participant is eligible to receive Social Security disability benefits, the maximum insurance limitation will not be reduced because of early retirement. 29 U.S.C. § 1322(b)(3). But again, the participant's benefit must be greater than the maximum insurance limitation; otherwise, the limitation never comes into play.

Plaintiffs argue that because the maximum insurance limitation is not adjusted for early retirement in cases of participants eligible for Social Security disability benefits, Mr. Dumas should receive the full amount of the maximum insurance limitation as his pension. This simply is not true. The maximum insurance limitation does not entitle any individual to a certain benefit - it only limits the PBGC's guarantee of a plan benefit that is

11

already greater than the maximum insurance limitation. Rather, this provision establishes that if Mr. Dumas was eligible for Social Security benefits, if his benefit was greater than $3,579.55 (the maximum insurance limitation), and he retired early, the PBGC would not actuarially reduce the maximum insurance limitation. But this is not the case. Mr. Dumas' undisputed entitlement under the Pension Plan is $471.70. Thus this exception is not applicable, and the maximum insurance limitation does not apply either.

For all of these reasons, this Court concurs with the decision of the PBGC Appeals Board, and finds that the decision is not arbitrary, capricious, or an abuse of discretion.

CONCLUSION

For the aforementioned reasons, the Motion for Summary Judgment, filed by Defendant, Pension Benefit Guaranty Corporation, on August 31, 2006, is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' complaint. Furthermore, this Clerk is **ORDERED** to **CLOSE** this case.

**DATED: April 9, 2007**                    /s/ RUDY LOZANO, Judge
                                            **United States District Court**